FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 25, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EMILIE A.,<br><br>                         Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                         Defendant. | NO:  4:22-CV-5096-RMP<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>JUDGMENT IN FAVOR OF THE<br>COMMISSIONER |

    BEFORE THE COURT, without oral argument, are briefs from Plaintiff

Emilie A.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the

"Commissioner"), ECF No. 11.  Plaintiff seeks judicial review, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claim for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act

(the "Act").  *See* ECF No. 10 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and last initial.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 1

Having considered the parties' briefs, the administrative record, and the applicable law, the Court is fully informed.[2]  For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

### General Context

Plaintiff applied for SSI on May 23, 2019, alleging an amended onset date of September 1, 2018.  *See* Administrative Record ("AR")[3] 15, 38, 148–64.  Plaintiff was 22 years old on the alleged disability onset date and asserted that she is unable to work due to seizures and headaches.  AR 148, 178–80.  Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 72–93.

On May 12, 2021, Plaintiff appeared by telephone, represented by her attorney Chad Hatfield, at a hearing held by Administrative Law Judge ("ALJ") Mark Kim from Spokane, Washington.  AR 33–35.  The ALJ heard from Plaintiff as well as

---

[2] The Court notes that Plaintiff did not file any reply.  Failure to comply with the filing deadlines set by Local Civil Rule 7 "may be deemed consent to the entry of an order adverse to the party who violates these rules."  LCivR7(e); *see also* Fed. R. Civ. P. 56(e) ("If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.").

[3] The Administrative Record is filed at ECF No. 8.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 2

vocational expert ("VE") Jillian Fox.  AR 35–11.  ALJ Kim issued an unfavorable

decision on August 5, 2021, and the Appeals Council denied review.  AR 1–6, 16–

22.

### ALJ's Decision

Applying the five-step evaluation process, ALJ Kim found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the

application date, May 23, 2019.  AR 17 (citing 20 C.F.R. § 416.971 *et seq*).

**Step two:** Plaintiff has the following severe impairment that is medically

determinable and significantly limits her ability to perform basic work activities,

pursuant to 20 C.F.R. §§ 416.920(c): epilepsy.  AR 17.  The ALJ further found that

Plaintiff "has reported having memory loss and headaches associated with her

seizure activity[.]"  AR 17.  However, the ALJ found that these symptoms do not

constitute separate impairments and, moreover, Plaintiff "also testified that her

headaches were brief, and indications of memory loss have not been substantiated

objectively and would posed [sic] no more than minimal limitations on the

claimant's ability to perform basic work-related mental activities."  AR 17.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 17 (citing 20

C.F.R. §§ 416.920(d), 416.925, and 416.926).  The ALJ memorialized that he

reviewed the listings under chapter 11.00 for the neurological system, including listing 11.02 for convulsive epilepsy.  AR 18.  The ALJ further recited that "the claimant has been noted to not be compliant with treatment and her reports of seizure activity has fluctuated."  AR 18.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has the RFC to perform "full range of work at all exertional levels but with the following non-exertional limitations: except she can never climb ladders, ropes, or scaffolds; must avoid hazards such as dangerous moving equipment/machinery and unprotected heights; and she would miss one workday every two months due to her seizure disorder/physical impairment(s)."  AR 18.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 19.

**Step four:** The ALJ found that Plaintiff has no past relevant work.  AR 20 (citing 20 C.F.R. § 416.965).

**Step five:** The ALJ found that Plaintiff has at least a limited education; was 23 years old, which is defined as a younger individual (age 18-44), on the date that the application was filed; and that transferability of job skills is not material to the determination of disability because Plaintiff has no past relevant work.  AR 20–21

(citing 20 C.F.R. §§ 416.963, 416.964, and 416.968). The ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy. AR 21. Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff could perform with the RFC: fast food worker (light, unskilled, with around 2,325,955 jobs nationally); maid (light, unskilled work, with around 896,000 jobs nationally); and storage rental clerk (light, unskilled work with around 43,130 jobs nationally). AR 21. The ALJ concluded that Plaintiff has not been disabled within the meaning of the Act from the application date of May 23, 2019. AR 21.

Plaintiff sought review of the ALJ's decision in this Court. ECF No. 1.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere

scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

1989).  Substantial evidence "means such evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

[Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

*v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

record, not just the evidence supporting the decisions of the Commissioner.

*Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the

proper legal standards were not applied in weighing the evidence and making a

decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

1988).  Thus, if there is substantial evidence to support the administrative findings,

or if there is conflicting evidence that will support a finding of either disability or

nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death, or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if they are engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past.  If the claimant can perform their previous work, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.  Did the ALJ erroneously assess the medical source opinions?
2.  Did the ALJ erroneously omit Plaintiff's hypothyroidism as a severe impairment at step two?
3.  Did the ALJ conduct an inadequate analysis at step three?
4.  Did the ALJ erroneously discount Plaintiff's subjective complaints?
5.  Did the ALJ erroneously reject lay witness testimony?
6.  Did the ALJ fail to meet his step five burden?

### *Medical Source Opinions*

Plaintiff argues that the ALJ failed to assess the supportability or consistency of the disabling opinion from nurse practitioner Kelli Campbell, ARNP. ECF No. 10 at 8–9. Plaintiff continues that the ALJ made "no attempt to address the record evidence or explanation provided by ARNP Campbell," which Plaintiff argues falls short of the requirements of the new regulations addressing medical opinions. *Id.* at

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 9

10.  Plaintiff asserts that, contrary to the ALJ's reasoning, ARNP Campbell did not qualify her assessment of Plaintiff, and she "suggested further workup for the claimant's memory/focus issues and forgetfulness rather than her seizures, noting treatment from neurologist Dr. Erlemeier." *Id.* Moreover, Plaintiff asserts that the record demonstrates that her past noncompliance occurred before the application date and that missing some appointments due to memory deficits associated with her severe hypothyroidism "is not the same as noncompliance[.]" *Id.* at 10–11.  Plaintiff adds that "the fact that the claimant's reports fluctuated has no bearing on the persuasiveness of ARNP Campbell's opinion, as seizures are irregular and unpredictable." *Id.* at 11.  Furthermore, Plaintiff cites to portions of the record that she asserts support ARNP Campbell's assessment. *Id.* (citing AR 311–13, 336–37, 372, 382, 424–25, 434, and 443–44).  Plaintiff also cites records indicating that ARNP Campbell began treating Plaintiff before the April 2021 office visit cited by the ALJ. *Id.* at 12 (citing AR 410–11).  ARNP Campbell also wrote that Plaintiff "needs to have further evaluation [and] neuropsychologist to investigate memory/focus issues." *Id.* at 9 (quoting AR 456).

The Commissioner argues that the ALJ reasonably found ARNP Campbell's opinion on the limiting effects of Plaintiff's seizures unpersuasive. ECF No. 11 at 8–10.  The Commissioner writes, "[ARNP] Campbell wrote her opinion in May 2021, but admitted that she did not start seeing Plaintiff until April 2021." *Id.* at 9

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 10

(citing AR 454). The Commissioner also cites to ARNP Campbell's acknowledgement that "Plaintiff 'needs to have further evaluation [and] neuropsychologist to investigate memory/focus issues.'" *Id.* (citing AR 456). The Commissioner submits, "On this record, the ALJ reasonably concluded that because ARNP Campbell had such a brief treatment history to draw on and candidly admitted that further evaluation was necessary, her opinion was less persuasive than if she had a more longitudinal picture of Plaintiff's functioning." *Id.* The Commissioner further argues that the ALJ's finding that Plaintiff's reports about the frequency of her seizures fluctuating also supports finding ARNP Campbell's opinion unpersuasive, as it was based on the premise that Plaintiff was experiencing seizures at least three times per month. *Id.* (citing 20 C.F.R. § 416.920c(c)(2); AR 341, 347, 353, 374, 389, 394, 399, 413, 455).

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence, and require the ALJ to articulate how persuasive he finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources. *See* Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors such as the source's

familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(b)(2).  With respect to these two factors, the regulations provide that an opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1). The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Courts also must continue to consider whether the ALJ's finding is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..").

Prior to revision of the regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted treating or examining physician's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  However, the Ninth Circuit has held that the Social Security

1 regulations revised in March 2017 are "clearly irreconcilable with [past Ninth

2 Circuit] caselaw according to special deference to the opinions of treating and

3 examining physicians on account of their relationship with the claimant." *Woods v.*

4 *Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22,

5 2022).  The Ninth Circuit continued that the "requirement that ALJs provide

6 'specific and legitimate reasons' for rejecting a treating or examining doctor's

7 opinion, which stems from the special weight given to such opinions, is likewise

8 incompatible with the revised regulations." *Id*. at *15 (internal citation omitted).

9     Accordingly, as Plaintiff's claim was filed after the new regulations took

10 effect, the Court refers to the standard and considerations set forth by the revised

11 rules for evaluating medical evidence.  *See* AR 15, 38, 148–64.

12     ARNP Campbell completed a form "Medical Report" for Plaintiff on May 14,

13 2021.  AR 454–57.  On the form, ARNP Campbell indicated that Plaintiff's first and

14 last dates of treatment with her were on: "4/14/21 (last office visit) 10/6/21[.]"  AR

15 454.  ARNP Campbell opined that Plaintiff would miss an average of four or more

16 days per month if she were attempting to work a full-time schedule, explaining that

17 Plaintiff "currently reports seizures occurring 3x times month [sic], has to lay down

18 3 to 4 times a week to rest[.]"  AR 455.  ARNP Campbell further opined that

19 Plaintiff is "severely limited" in terms of the exertional level that she can perform,

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 13

meaning that she is "[u]nable to perform the demands of even sedentary work."  AR 455.

ARNP Campbell opined that Plaintiff's limitations specified in this report have existed since at least December 20, 2012.  AR 456.  By way of "[o]ther comments," ARNP Campbell wrote that Plaintiff "[a]lso needs to have further evaluation & neuropsychologist to investigate memory/focus issues" and that Plaintiff "has barriers to care—doesn't drive, is forgetful so needs support to get to apts/follow through on recommended plans[.]"  AR 456 (as written in original).

ALJ Kim found that ARNP Campbell's assessment "cannot be found particularly persuasive since [ARNP] Campbell indicated that she had only seen the claimant for the first time the month before (April 2021) and further evaluation was needed."  AR 20.  ALJ Kim added that "as noted above, the claimant has not always been medically compliant, and her reports of seizure activity has [sic] fluctuated." AR 20.

As ALJ Kim noted, ARNP Campbell indicated only two treatment dates for Plaintiff, in April and October 2021, meaning an appointment merely one month before the May 2021 form opinion, and an appointment that had not yet occurred. AR 454–56.  Despite the brief length of the treatment relationship that ARNP Campbell reported, and despite indicating that the limitations were based on Plaintiff's "current" reports of seizures occurring three times per month, ARNP

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 14

Campbell opined that Plaintiff's severe limitations had existed since December 20, 2012. AR 454–56. As the ALJ reasoned, Plaintiff did not consistently report that frequency of seizures throughout the relevant period and sometimes did not report any seizures. *See* AR 303–19 (treatment records from January through April 2020). ARNP Campbell also opined that Plaintiff has a barrier to care in part due to being forgetful, but simultaneously recognized that further evaluation and examination by a neuropsychologist was necessary to assess Plaintiff's alleged memory and focus issues. AR 456. As demonstrated by ALJ Kim's discussion and reference to Plaintiff's medical record, the ALJ provided reasons going to the issues of consistency and supportability, as well as length of the treatment relationship, that were supported by substantial evidence. *See* 20 C.F.R. § 416.920c(c) (relevant factors include: (1) supportability; (2) constancy; and (3) relationship with the claimant, including the length of treatment relationship and the frequency of examinations).

The Court finds no error in the treatment of medical source opinions and denies summary judgment to Plaintiff on this ground.

### Step Two

Plaintiff claims that she "suffers the severe impairment of hypothyroidism, with associated memory loss and cognitive deficits." ECF No. 10 at 14. Plaintiff argues that the ALJ erroneously rejected hypothyroidism as a severe impairment at

1    step two without explanation.  *Id.* (citing AR 17).  Plaintiff further argues that the

2    alleged error of not recognizing hypothyroidism as a severe impairment "led to

3    another harmful error of the ALJ mistaking a memory impairment for

4    noncompliance." *Id.*  Plaintiff maintains these errors are harmful because "[w]hen

5    properly considered, [Plaintiff is determined disabled in accordance with the

6    findings of ARNP Campbell and Dr. Erlemeier, warranting immediate payment of

7    benefits." *Id.*

8         The Commissioner responds that the ALJ reasonably "found that Plaintiff's

9    alleged memory loss was not 'substantiated objectively.'"  ECF No. 11 at 2 (citing

10   AR 17).  The Commissioner cites the Court to examinations findings that Plaintiff

11   had intact memory and denied memory loss.  *Id.* at 2–3 (citing AR 317, 337, 434–

12   35).  The Commissioner asserts that Plaintiff does not cite any objective evidence of

13   memory problems.  *Id.* at 3.  Moreover, the Commissioner maintains that because

14   the ALJ resolved step two in Plaintiff's favor by finding epilepsy to be a severe

15   impairment, and expressly considered Plaintiff's alleged memory problems in

16   assessing Plaintiff's RFC, there was no harmful error at step two.  *Id.*

17        At step two, an ALJ must determine if the claimant has a "severe" medically-

18   determinable impairment or combination of severe medically-determinable

19   impairments. 20 C.F.R. § 416.924(a). A claimant bears the burden of showing a

20   medically "severe impairment" or "combination of impairments." *Barnhart v.*

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 16

*Thomas*, 540 U.S. 20, 24 (2003). However, the claimant's burden is not heavy, as step two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Provided that the claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19, at *7-8, 1985 WL 56856, at *3 (1985).

If a claimant satisfies step two's de minimis standard, an ALJ "must find that the impairment is 'severe' and move to the next step" in the five-step evaluation. *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original). An ALJ's error at step two is not reversible if the ALJ resolves step two in claimant's favor and otherwise properly accounts for Plaintiff's limitations. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

In this case, the ALJ resolved step two in Plaintiff's favor by finding Plaintiff's epilepsy to be a severe impairment. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step-two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"). The ALJ proceeded to discuss the symptoms that Plaintiff alleges to result from hypothyroidism, memory loss and

headaches, in assessing Plaintiff's subjective symptom complaints. *See* AR 17.

Therefore, even if the Court were to find error in the ALJ's treatment of

hypothyroidism at step two, which it does not, that error would be harmless. *See*

*Burch*, 400 F.3d at 682 (concluding that any error ALJ committed at step two was

harmless where the step was resolved in claimant's favor); *Kemp v. Berryhill*, 2017

U.S. Dist. LEXIS 147729, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any

error in declining to find other alleged impairments severe is harmless because step-

two is the "gatekeeping" step, and the ALJ continued the analysis).  The Court

denies summary judgment to Plaintiff on this ground and resolves the same in favor

of the Commissioner.

### *Step Three*

Plaintiff argues that the ALJ summarily concluded that Plaintiff does not meet

or equal a listing, specifically listing 11.02(A), without sufficient analysis.  ECF No.

10 at 14 (citing AR 17–18).

The Commissioner responds that the ALJ reasonably concluded that

Plaintiff's impairments do not satisfy the requirements of any listing.  ECF No. 11 at

4.  The Commissioner argues that listing 11.02(A) for epilepsy requires generalized

tonic-clonic seizures occurring at least once a month for at least three consecutive

months despite adherence to prescribed treatment, but, as the ALJ found, Plaintiff

was discharged from treatment with one of her doctors because of too many missed

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 18

appointments. *Id.* at 4–5 (citing 20 C.F.R. Part 404, Subpart P, App. 1, § 11.02A; AR 18, 307). The Commissioner continues that even if Plaintiff's memory problems caused her to miss appointments, which the Commissioner disputes, medical records indicating that Plaintiff's seizure activity fluctuated undermine that her seizures occurred monthly for three consecutive months, as required for the listing. *Id.* at 5.

Plaintiff bears the burden of proof at step three. *Bowen*, 482 U.S. at 146 n. 5. A mere diagnosis does not suffice to establish disability, and the per se disability under a listing requires "a higher level of severity than the statutory standard" for disability under the SSA. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir. 1985). A claimant must show that her impairment meets all of a listing's specified medical criteria. *Sullivan*, 493 U.S. 521 at 530.

The challenged listing requires a claimant to prove that she suffers from epilepsy by providing "a detailed description of a typical seizure" and documenting that the seizures qualify as "[g]eneralized tonic-clonic seizures (*see* 11.00H1a), occurring at least once a month for at least 3 consecutive months (*see* 11.00H4) despite adherence to prescribed treatment (*see* 11.00C)[.]" 20 C.F.R. Part 404, Subpart P, App. 1, § 11.02A. The ALJ found that "the claimant has been noted to not be compliant with treatment and her reports of seizure activity has [sic] fluctuated." AR 18.

Plaintiff contends that the ALJ "fails to identify even one treatment record since the application date showing that [Plaintiff] was noncompliant with treatment." ECF No. 10 at 15.  However, as the ALJ cites in his decision, a provider noted Plaintiff's noncompliance with recommended treatment in October 2018, after Plaintiff's alleged onset date.  AR 448–49 ("Seizure is uncontrolled since she was last seen in 12/2017. Patient is noncompliant.").  In April 2019, treatment notes from a neurology appointment found Plaintiff's noncompliance was "improved," but also memorialized that the provider had "[d]iscussed with the patient the importance of compliance" and had instructed Plaintiff to call in the event of another breakthrough seizure and "follow up in 2 months or earlier as needed."  AR 425.  An August 2019 medical record notes noncompliance.  AR 426.  In January 2020, a primary care provider noted that Plaintiff had been discharged from care by her former neurologist for missing too many appointments, with her last appointment in April 2019.  AR 316; *see also* AR 334 (specifying that Plaintiff missed "3 or more appointments").  Plaintiff claims that she missed appointments due to her memory issues associated with hypothyroidism, but Plaintiff does not substantiate this allegation with any records showing that her hypothyroidism existed on the dates of her missed appointments. *See* ECF No. 10 at 17–18.  In April 2019, at what appears to be the last neurology appointment that Plaintiff attended before being discharged from her former neurologist's care for missing three or more appointments,

Plaintiff's thyroid stimulating hormone ("TSH") levels were normal.   AR 424–25.

The record also reflects that Plaintiff was able to attend other appointments during

the approximate period of her missed appointments.  *See* AR 369.  There is no

diagnosis of hypothyroidism until an appointment on April 9, 2020.  AR 310–13; *see*

*also* AR 334 (October 2020 appointment record indicating that Plaintiff's blood test

on February 25, 2020 show highly elevated TSH levels).  There is no evidence

directly establishing that Plaintiff had hypothyroidism resulting in memory issues at

the same time that she missed neurology appointments.  Therefore, this is a matter of

interpretation of the record that is within the ALJ's role, not this Court's.  *See Ryan*

*v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (providing that the

Court shall consider the ALJ's decision in the context of "the entire record," and if

the "evidence is susceptible to more than one rational interpretation, the ALJ's

decision should be upheld.").

     The record also contains substantial support for the ALJ's finding that

Plaintiff reported varying frequencies of her seizures, and sometimes reported that

she was not having any seizures.  *See* AR 367.  As Plaintiff does not indicate any

records supporting that she had at least one seizure each month for a period of three

months, and the ALJ had substantial evidence of noncompliance to support his

reasoning, the Court finds no error on this ground.

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 21

1  *Subjective Symptom Testimony*

2  Plaintiff argues that the ALJ failed to provide specific, clear, and convincing

3  reasons for discounting Plaintiff's testimony and instead merely summarized the

4  medical evidence.  ECF No. 10 at 17.  Plaintiff disputes whether the record supports

5  the ALJ's reasoning that Plaintiff had been noncompliant with treatment and asserts

6  that "there are no indications she was noncompliant with treatment in April 2019,

7  August 2019, or June 2020."  *Id.*  Plaintiff also argues that her memory and other

8  cognitive deficits stemming from hypothyroidism "have resulted in missing

9  appointments," and Plaintiff did not discover her hypothyroidism until April 2020.

10  *Id.* at 18.

11  The Commissioner responds that the ALJ could rely on Plaintiff's

12  unexplained, or inadequately explained, failure to seek treatment or follow a

13  prescribed course of treatment to discount her subjective complaints.  ECF No. 11 at

14  7 (citing *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989)).  The Commissioner

15  further argues that Plaintiff's fluctuating reports about the frequency of her seizure

16  activity are an additional legitimate reason to discount her allegations.  *Id.* (citing

17  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)).

18  Plaintiff stated at the hearing that she had been getting approximately two to

19  three seizures per month for the couple of years prior to the hearing.  AR 39.  In

20  finding Plaintiff's statements concerning the intensity, persistence, and limiting

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 22

1    effects of her seizures to be "not entirely consistent" with the medical and other

2    evidence of record, the ALJ reasoned that Plaintiff "has not always been medically

3    compliant [with her medication] and her reports of seizure activity has fluctuated,

4    and has not been at the frequency alleged for disability purposes." AR 19.

5        In deciding whether to accept a claimant's subjective pain or symptom

6    testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

7    1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

8    presented objective medical evidence of an underlying impairment 'which could

9    reasonably be expected to produce the pain or other symptoms alleged.'"

10   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

11   *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there

12   is no evidence of malingering, "the ALJ can reject the claimant's testimony about the

13   severity of [his] symptoms only by offering specific, clear and convincing reasons

14   for doing so." *Smolen*, 80 F.3d at 1281.

15       As discussed above, Plaintiff does not substantiate her allegation that she had

16   memory problems due to hypothyroidism while she was missing neurology

17   appointments and does not explain why she was able to attend other appointments

18   during the same approximate period that she was missing neurology appointments.

19   Rather, the record contains substantial support for the ALJ's reasoning that Plaintiff

20   was noncompliant with treatment during the relevant period. *See* AR 425–26, 448–

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 23

49.  Furthermore, the record also contains substantial support for the ALJ's finding that Plaintiff reported varying frequencies of her seizures, and sometimes reported that she was not having any seizures.  *See* AR 367.  These reasons are specific, clear, and convincing and are supported by substantial evidence.  The Court finds no error on this ground.

### Lay Witness Testimony

Plaintiff asserts that the ALJ impermissibly discounted lay witness statements from Plaintiff's "mother, father, ex-husband/partner, and former mother-in law detailing her progressive convulsive seizures, speech deficits, cognitive impairment, forgetfulness, tics, injuries from falls, and extended recovery time where she is weak and incoherent, resulting in the inability to maintain competitive employment."  ECF No. 10 at 16 (citing AR 238–45).  Plaintiff argues that the ALJ mischaracterized the record and failed "to recognize the fact that [Plaintiff] has been compliant since the application date, and misunderstands the nature of epilepsy."  *Id.*  Plaintiff adds that, "[i]n sum, none of the ALJ's reasons are germane to the claimant's family members who have witnessed first-hand her seizures and progressive decline in functioning."  *Id.*

The Commissioner responds that under the relevant regulations, the ALJ "was not required to provide any analysis of how he considered the nonmedical source statements, let alone provide germane reasons to reject them."  ECF No. 11 at 12

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 24

1    (citing 20 C.F.R. § 416.920c(b); Revisions to Rules Regarding the Evaluation of

2    Medical Evidence, 82 Fed. Reg. 5,844, 5,850 (Jan. 18, 2017)).  Moreover, the

3    Commissioner argues that the reasoning that the ALJ provided, despite not being

4    required to provide reasons to reject the testimony, was legally sufficient.  *Id.* (citing

5    *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

6        The ALJ in this case asserted that he was not required to articulate how he

7    considered evidence from nonmedical sources, but nevertheless reasoned as follows

8    with respect to the statements in the record from Plaintiff's mother, father, ex-

9    husband/partner, and former mother-in-law: "In short, while these third-party report

10   statements confirm that the claimant has a seizure disorder/epilepsy and as noted

11   above, the claimant has not always been medically compliant, and her reports of

12   seizure activity has fluctuated."  AR 20.

13       The revised regulations that apply to disability applications filed on or after

14   March 27, 2017, provide that lay witness testimony fits within the category of

15   evidence from nonmedical sources, which the ALJ will "consider" in how a

16   claimant's symptoms affect his activities of daily living and his ability to work.  *See*

17   20 C.F.R. §§ 416.913(a)(4), 416.945(a)(3), and 416.929(a).  However, an ALJ is

18   "not required to articulate *how* [he or she] considered evidence from nonmedical

19   sources."  20 C.F.R. § 416.920c(d) (emphasis added).

20

21

1      Prior to the revisions to the relevant regulations, the United States Court of

2  Appeals for the Ninth Circuit required an ALJ to express germane reasons for

3  discounting lay witness testimony.  *Turner v. Comm'r*, 613 F.3d 1217, 1224 (9th

4  Cir. 2010).  As other courts have noted, the Ninth Circuit has yet to address whether

5  the revised regulations modify the requirement for germane reasons to discount lay

6  witness testimony.  *See Johnson v. Kijakazi*, 2022 U.S. App. LEXIS 24769, at *4–5

7  (9th Cir. Sept. 1, 2022) (declining to address whether an ALJ must discuss the

8  treatment of lay witness statements in his or her decision after the 2017 revised

9  regulations); *Sharon v. Kijakazi*, 2023 U.S. Dist. LEXIS 10129 (D. Id. Jan. 18,

10 2023); *Robert U. v. Kijakazi*, 2022 U.S. Dist. LEXIS 20038, 2022 WL 326166, at *7

11 (D. Or. Feb. 3, 2022).  The Court notes, however, that the Ninth Circuit has

12 expressed in dicta in an unpublished decision that while "it is an open question

13 whether ALJs are still required to consider lay witness evidence under the revised

14 regulations, . . . it is clear that they are no longer required to articulate it in their

15 decisions." *Fryer v. Kijakazi*, No. 21-36004, 2022 U.S. App. LEXIS 35651, at *7

16 n.1 (9th Cir. Dec. 27, 2022).

17     Furthermore, the Ninth Circuit has continued to hold after the 2017 revision of

18 the regulations that any error by an ALJ in failing to provide reasons for rejecting a

19 lay witness is harmless if the ALJ's reasons for discounting the plaintiff's testimony

20 were sufficient and the lay testimony is substantially similar to the plaintiff's

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 26

1    testimony.  *See Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (holding

2    that the same germane reasons that applied to the claimant's testimony applied to his

3    wife's, which was similar to his own); *Johnson*, 2022 U.S. App. LEXIS 24769, at *5

4    (finding the ALJ's failure to address lay witness testimony harmless where the lay

5    witness statements were "largely duplicative" of plaintiff's testimony).

6        The third-party statements in this case replicate Plaintiff's subjective

7    complaints about the disabling effect of her seizures.  *See* AR 238–45.  Therefore, in

8    discounting the third-party statements for the same reasons that he discounted

9    Plaintiff's subjective testimony, the ALJ provided a germane reason and did not err.

10       The Court finds no error on this ground.  Therefore, the Court denies

11   judgment to Plaintiff, and grants judgment to the Commissioner with respect to the

12   ALJ's treatment of lay witness statements.

13   ***Step Five***

14       Plaintiff contends that the ALJ erred at step five because the VE testified in

15   response to a hypothetical that Plaintiff argues was incomplete because it

16   "underrepresents both the frequency of her seizures and the duration of her recovery

17   period."  ECF No. 10 at 20.  The ALJ's hypothetical must be based on medical

18   assumptions supported by substantial evidence in the record that reflect all of a

19   claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

20   The ALJ is not bound to accept as true the restrictions presented in a hypothetical

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING JUDGMENT IN FAVOR OF THE COMMISSIONER ~ 27

question propounded by a claimant's counsel.  *Osenbrock*, 240 F.3d at 1164.  The ALJ may accept or reject these restrictions if they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Plaintiff's argument assumes that the ALJ erred in his treatment of Plaintiff's subjective symptom testimony and the medical source testimony and in formulating the RFC.  As discussed above, the ALJ's assessment of this evidence was not erroneous.  Therefore, the RFC and hypothetical contained the limitations that the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony that the VE gave in response to the hypothetical was proper.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005).  The Court grants judgment to the Commissioner on this final ground.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Opening Brief, **ECF No. 10**, is **DENIED**.

2.  Defendant the Commissioner's Brief, **ECF No. 11**, is **GRANTED**.

4.  Judgment shall be entered for Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** September 25, 2023.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge
